May it please the court. Davina Chan on behalf of Eric Quinn Franklin, I'd like to reserve three minutes for rebuttal. The district court in this case felt compelled to impose the ACCA sentence, but that sentence was unavailable for three independent reasons. First, in determining that his convictions were offenses committed on occasions different from one another, the district judge made findings as to non-elemental facts in violation of Apprendi or Mathis. Second, the convictions were not punishable by 10 years or more because there were no aggravating factors that would have permitted the maximum 10 year sentence. And third, because all Washington convictions may be obtained on an overbroad theory of accomplice liability, the convictions did not constitute serious drug offenses for the ACCA. Because the first two issues were thoroughly briefed in the normal course, I'd like to focus today on the third issue. In Valdivia Flores, the court recognized that Washington's theory of accomplice liability is exceptionally broad. And therefore, it held that a Washington conviction for delivering a controlled substance was not an aggravated felony. For the same reason, it's not a serious drug offense under the ACCA. Is there, could there be a case in which the Sheppard documents, I understand nobody's arguing this is a divisible crime, but could there be a case in which the Sheppard documents made clear that liability was based on being a principal rather than an aider or better? I mean, if you're asking that in terms of like, as a legal matter, could that happen? I would say there could be. But Mathis is very clear that we don't look at Sheppard documents unless a statute is divisible. And in Mathis, we had trials, right? There were trials and there were trials where it was identified that the occupied structure was a building. Well, no, but I guess my question is this. What if the jury were not instructed on aider and a better liability? Again, I think that Mathis is very, is really on point in this matter because in Mathis, the jury would not have been instructed that they could have convicted on the basis of a water vehicle or an air vehicle. But why isn't it divisible? I mean, it wasn't, there's no argument here about divisibility, presumably because there is nothing in the Sheppard documents that would demonstrate that it was aiding and abetting versus principal. But I, since the aiding and abetting is a separate statute altogether, isn't it? It is, but under Washington. Why is it not divisible? Under Washington law, it's not divisible because, one, even if an individual is charged only as a principal, he can be convicted at trial as an aider and abetter. Two, the jury need never be unanimous as to whether it was an aider, abetter, or a principal. Half of them could have. I'm so finished. I'm sorry, I didn't mean to. Half of the jurors could believe that someone was the aider and abetter. And the other half could believe that they're the principal, and they could still convict. All of that doesn't matter here, anyway, because nobody is arguing for a modified categorical approach. That's correct. Right, and I agree with Judge Berzon on that. I'm just trying to figure out where the limits of, and I'm going to call on Flores because I can't pronounce the first part of the hyphenated name, Valdevitos, I guess it is. What are the limits of that doctrine? For example, if we could tell from the Shepard documents that a jury was not instructed on aider and abetter liability, would a crime be divisible in that sense? I don't believe it would. I mean, I think it's very clear from Taylor, Decomp, and especially Mathis, that you don't really look to the documents to determine something is divisible. If the State's law is clear, and no one is arguing that Washington State's law is not clear, then you don't look to the documents. Let me ask you about this case, so that we're not making a theoretical argument. In this case, was the State jury instructed on aider and abetter liability? No, it was not. Okay, so in this case, is it possible that what we have is two statutes that apply? The aider and abetter statute and the principal statute. And we can tell that the conviction must have been on the principal basis, because there was no aider and abetter instruction. I don't believe you can do that, because under Washington law, it could always have been an aider and abetter. I mean, this really- Even if the jury didn't know about the theory of aiding and abetting. Yes, similarly, in Mathis, if the jury didn't know that it could convict on the base of a house vote, then the Supreme Court says you don't look to the document to determine whether they were instructed as to a house vote or a building. Well, there is a sort of intuitive difference, because I presume, and I don't remember, that in Mathis they were instructed about the whole statute, or they were instructed in a way that excluded the house vote.  But here they were instructed in a way that, as I understand it, that he had to do X, Y, and Z. And X, Y, and Z didn't include aiding and abetting. Valdivia Flores addressed this very issue and held that you just don't look to the charging documents or any other document. And so when we ask what are the limits of Valdivia Flores, I think what we're asking is what are the limits of Taylor, Decomp, and Mathis? And I think Mathis is clear. Let me talk about the breadth of Valdivia Flores, okay? Washington is- Actually, it seems to me what would be most useful for you to talk about is the government's contentions that Valdivia Flores isn't controlling here. I mean, they have some reasons they claim that it's not controlling, and I'd like to know what you think about their reasons. Okay, so- One is the involving language, and the other one I don't even understand, but. Well, the involving language, the government filed a 28-J letter last week, and I was actually very happy that they did it, even though it messed up my Mother's Day weekend, because it really crystallized for me two things. It crystallized, one, what their actual argument is, and two, where the other circuits went astray, okay? So in terms of what their actual argument is, their actual argument is not that involving in this case draws in other types of offenses, like soliciting or wearing armor during a drug trafficking offense. Their argument really is that Washington law need not perfectly match any definition. And I quote from their 28-J letter. It supports our argument that 924E2A2 should not be limited to state drug sentences, but perfectly match the generic crimes, nor need the state law perfectly match any generic inchoate method for committing these offenses. So their argument really isn't that it draws in more offenses. It's that there need not be a perfect match. Or that there need not be a generic offense. Right, which I think just goes against the tide. I understood it as making two arguments, so I wanted you to try to respond to at least one of the two that I thought it was making. One was saying, forget about this aiding and abetting stuff. Don't worry about inchoate. And the second was, yeah, the offense may not match up perfectly. Washington offense may not match up perfectly to the generic offense, but that doesn't matter. Is that- Let me talk about that second part, okay? So first of all, it's not that it doesn't match up perfectly. I mean, we're talking about a different mens rea. So it's not that there's some detail that's missing. We're talking about whether it needs to be intentional or just knowing. And I do think that their letter really offers some clues as to why the other circuits went astray, okay? So Contreras involved 924C2 before it was amended in 1988. And 924C2 was only about federal drug offenses. It defined the universe of cases to which a 924C could be attached to a federal drug offense. So it had to be a statutory match, if you will, not a generic match. It had to be a statutory match to a federal offense, okay? Not to a generic offense. Right, not a generic offense. It didn't attempt to identify a category of state offenses that would trigger federal consequences. So in that way, it's entirely different from what we're talking about here. Second, in Contreras, it was pre-Taylor. So it was before we even had this sense of the generic offense. And it was pre-Shidler, in which the Supreme Court said, even when you add the word involving, it still needs to be a generic match. So it's very early. And third, it really offers no support for the government's argument that Congress would have intended a much broader range of state offenses to trigger the ACCA than federal offenses. Let me ask you a question about the, what I would call the principal offense, not the encoded offense. Let's assume that we didn't have aiding and abetting liability, either in the federal offense or the state offense. Would it be a generic match under those circumstances? My argument is that it would not, because I believe that the federal definition of deliver is narrower, of distribute is narrower than the Washington definition of deliver. However. On that one, it seems to me you have a good argument, but we have a case that's fairly. It's interesting. In Borges-Ortega, the government argues it's directly on point. And they argue that because they say that the guidelines definition is the same as the 924E2A2 definition, which now they're saying it's the opposite, right? So I do think that Washington law is broader, even without the aiding and abetting liability. But I do think that Valdivia Flores holds, you must consider the aiding and abetting liability. And when I talk about the breadth of that decision, it's really not that broad, because it only covers Washington and probably four other states, okay? And those states could easily amend their law to require what every other state requires in terms of aiding and abetting liability. And it seems to me almost a due process. Although, I mean, what's interesting about the whole Taylor problem, although we keep telling the states that they never seem to do it. They don't seem to think it's their job to write their statute to please the federal recidivist statutes, and they don't do it. Well, I mean, I know that people in Washington state are pushing for a more narrow aiding and abetting liability. The litigation in respect to the death penalty is quite clear that Washington now understands that if you have to intentionally kill someone, then killing someone under an aiding and abetting liability is not enough. I know that you chose not to talk about the apprentice issue, but I just want to just clear one thing up about it. This is another instance where I think you have a very good theoretical argument. The problem here is that the jury did find the dates. Specifically, specifically. So if apprendi applied, what would be different than what actually happened? You would ask them to find the dates. To put it differently, you're applying a decamp analysis to an apprendi decision. With your amethyst analysis, what you're telling us is that we can only look at the elements of the offense to determine whether somebody actually had a jury trial on an issue. And where do you get that from? Mathis. I get it from Mathis, right? So Mathis is quite clear that the only thing that a federal sentencing judge can find consistent with apprendi, so that's where it ties in. A federal judge can obviously find anything at once. But suppose we found that you were right and that apprendi does apply to this. And what would we do? We would tell them you have to send this question to the jury. Yes. And they did.  that jury was not required to find the dates. I understand your argument. The jury did find it. The jury was told it did have to find it and it did find it. You know, it's funny because I reviewed our argument from two years ago and we found ourselves in exactly the same spot two years ago. But I think Mathis makes a difference. Didn't the count, each count in the charging document have separate dates in it? It did. And then the jury convicted on each of the three counts? Yes, but the jury instructions said that they needed to find only on or about. And so we had counts that stated September 3rd, 5th, and 7th. And under Washington law, the date is not an element of the offense. So if all the jurors thought that all three counts occurred on the 5th, which were all on or about 3rd, 5th, and 7th, they could have voted yes as to all of them. They were not instructed that they needed to find three separate dates, just three separate counts. I know you wanted to save some time for rebuttal, but let me just ask you one question on the Apprendi issue. What if there had been three separate trials? Three separate trials for the same offense? No, three separate trials that came up with the same three convictions that the jury came up with in this case. I would have the same argument. You'd have the same argument. So under your view, there's no way we would ever be able to tell whether offenses were committed on this. Right, exactly, which is why it should be- Suppose they didn't say on and about, suppose they said on, then what? On might be different. However, let me be clear. It still wouldn't be an element. I'm not saying that anyone could never be sentenced under the ACCA. What I'm saying is that this fact would need to be submitted to the Federal jury, right? So we have this in 1326 cases all the time where we submit- You're just discounting the- this is what I'm trying to clarify. You're discounting the- the problem you're identifying is that the jury didn't find it. No jury found it. So if the jury did find it, I mean, if it didn't say on or about, it said on, in the state convictions, why wouldn't that satisfy Apprendi? I think that it doesn't satisfy Apprendi that- You're saying it has to be found in the Federal trial. I do, because I think Mathis is really clear that you don't look to that kind of document. What you're really saying is it doesn't satisfy Almenderis-Torres, because Almenderis-Torres only lets us look to the fact of the state conviction and whatever things the jury necessarily found to take convictions out of the general Apprendi rule. Necessarily found as opposed to actually found. And that's very constrained because it's shaky, really, is what you're saying. Well, I'm just saying necessarily found as opposed to actually found. So if the state said, actually, the date of the offense is an element, and in fact, we want the jury to find it's an element that there were three separate offenses that were committed on three separate occasions, that would be fine, right? That would satisfy Apprendi, that would satisfy de Camp, but when what we're saying is that the jury actually found it, which I disagree that the jury actually found it because it wasn't required to, but it wasn't required to find it. Then I think we've run afoul either of Apprendi or Taylor. Okay, you're out of time, I'll give you a minute in rebuttal, thank you. Good morning, your honors, may it please the court, Michael Morgan for the United States. I guess I'll pick up where counsel left off on the Apprendi point real fast. We all know that Apprendi has carved out the fact of conviction exception, that's survived Apprendi. This court in Grissel held that the date of a conviction as referred- But that was before de Camp and Mathis, was it not? Yes, but de Camp and Mathis have absolutely nothing to do with- Yes, they don't have nothing to do, they have a lot to do, because they rest at least in part in Apprendi. When determining whether or not an offense qualifies as a serious drug offense, a court has to define three things. One, whether or not the offense matches the definition of a serious drug offense. Two, whether the statute of the stat max is at least ten years. And three, did the requisite convictions occur on occasions different from another?  It's not that the requisite convictions occur, but that they involve events that were on different days. Yes, yes. If I missed a book, I apologize. But that's critical. But Taylor, Mathis, and de Camps all focus on the first inquiry, determining what the elements of the crime are, so you can decide whether or not it matches the generic definition in a violent felony or a serious drug offense. That's a separate inquiry from whether or not the conviction, the events occurred on occasions different from another. And this Court has held, and Bank, that that third inquiry falls within the fact of conviction exception. Held in which case? This Court's case in Grissel. Yes, right. I understand, but it's clearly a fact. Of course, and the problem is this. It's a fact that isn't the fact of conviction in this instance, because it's about — if the question was when the conviction occurred, that would be one thing. But that's not the question. The question is when the crime was committed. I understand, Your Honor, but the — But how can that not be a fact about the crime as opposed to a fact about the conviction? Nobody is disputing that the date on which the crime occurred is a non-elemental fact. Nobody is disputing that. No one is also disputing that it was submitted to the jury. No one is disputing it was submitted to the jury either. So what's wrong with having the solution that Ms. Chen proposes, which is that when the Federal jury just needs to look at the record from the State case and say, yes, these were on separate occasions? As a practical matter, not much. But as a doctrinal matter, it's not required, because the fact of conviction, which includes the date — I'm sorry. I don't understand what you're saying. The fact of conviction doesn't include the date. Why does it include the date on which the crime occurred if the date on which the crime occurred was not something that had to be found? Now, let's put aside the fact that it was arguably found in this case. But suppose there was nothing. It didn't go to the jury. Suppose it had been on three different — there had been three different trials, as Judge Hurwitz posited, and therefore no particular reason for the jury to distinguish the different counts, and therefore it never went to the jury. The date itself never went to the jury. Why would that be a fact of conviction as opposed to the fact of the crime? We're talking — facts of the crime are irrelevant for all purposes. What's happening here is we're confusing the elements of the crime. That's the — All right. Would you answer my question? Suppose you had a jury verdict. Yes. That said nothing about the date on which the crime occurred. Yes. Why would it then not be — why would it be a fact of conviction of the date on which the crime occurred? Well, if the judgment didn't specify the date, it wouldn't. So then you'd have to, in that Federal trial, if you wanted to use those three convictions, ask a jury to find that they occurred on separate occasions, would you not? I think — I mean, I hate to argue against myself, but I think as a doctrinal matter — At least if you — under pure Apprendi and — Under pure Apprendi, if you're going to say that the day — the day the crime occurred — Is an affected element of an aggravated offense. If you're going to say that, then yes. Under an Apprendi analysis, you would have to do that. Okay. So now we have a case in which it's not an element of the state offense, but we happen to know from looking at the judgment of conviction that these did occur on separate dates. What are we supposed to do in that case? You say Purcell controls that? Grissel. Grissel. And yes. In fact, that was in fact the case in that. Okay. And so I'm interested in — and I'm not sure you answered Judge Berzon's question — Does R. N. Bank decision survive the later decisions by the Supreme Court? Yes, it does. Because we're not talking about what are the elements of the offense. That's what Taylor — and recall that Grissel postdates Taylor. And Taylor is the seminal case here. Not Mathis, not DeKalb. If you take the Supreme Court at its word, Mathis and DeKalb were just simply straightforward applications of Taylor. But they were correcting what we were doing with those cases, with Taylor and his progeny, which is lapsing into finding facts without quite realizing it. They sort of slapped us across the face in those second ones and said, don't you understand, Taylor? You're not allowed to find facts. I understand. And I'm simply saying is that Apprendi is a different inquiry from — I'm not understanding that, but maybe we should go on to Valdivia. OK. The issue with the Valdivia Flores decision is what we have here is a definition of a state drug offense that is materially different than the decision — than the definition that was at issue in Valdivia Flores. Valdivia Flores specifically tied the definition at issue to the Controlled Substances Act. So therefore, the state crime had to match the equivalent crime in the Controlled Substances Act. You think Judge O'Scanlan's concurrence to his own opinion is wrong? Well, I'm — Well, because he said in concurring, he said, I don't like this result. Oh, I think it's compelled by Mathis and Taylor. And it means that no Washington crime will ever — will never be a generic match for the federal. Well, it will never be a generic match for the federal if federal law is the benchmark that has to be determined. I mean, if the court were — Well, but if it's not federal law, I mean, there — as we were kind of exploring before, it seems that your argument in the end essentially is there doesn't have to be any generic. Ordinarily, under Taylor analysis, there has to be a generic crime, which sometimes can be the actual federal statute when there is an allusion to the federal statute. Or else it's a generic crime, which is defined by looking at, you know, state laws generally and so on. So if there — if it doesn't have to match a federal crime, doesn't it have to match a generic crime? Well, the government's position is that the language of the statute, by defining it as an offense under state law, under state law, that's the benchmark. It's a state — state law is the definition full stop. So your position is that we need not engage in the categorical analysis? As long as the state law involves manufacturing, distribution, or possession with intent — No, any state law about drugs that involves these things — but the whole exercise of the categorical generic approach is what does that mean? We have to figure out what it means. It can't just be — And if you use your approach, presumably you'd use it for everything else, too. Like, for example, burglary. I mean, why don't you just say, well, if the state says it's burglary, it's burglary? No, Your Honor. And I've got — the answer for that is that when Congress just laid out those offenses, they didn't tie it to anything. That's why in Taylor, the Court said, well, we're stuck with — Well, they didn't tie it — on your theory, they didn't tie it to anything here either. Oh, no, they did. They tied it to state law. And this is the interesting thing. 924C shows that when Congress wants to make federal law the benchmark, it knows how to. Just go look at 924C-2, where — But you're saying that if federal law is not the benchmark, we just look to what? Whatever the state says? Yes. Going back to what Judge Berzon said, if the state says it's burglary, it's burglary if the state — no matter what? That's correct. And I would note that — I mean, I don't have any decisions from this Court because it's — I can't find that this issue's come up. But the Eleventh Circuit has confronted this exact same problem. They had a Florida statute that had no mens rea, a possession statute that had no mens rea. So it was now — it was broader than the federal definition. And the Eleventh Circuit said it says state law. It's a state law conviction involving the possession with intent. The fact that it has no mens rea is irrelevant because Congress specifically tied it to state law. And I would argue that even if the Court is not prepared to accept that position, at most it would have to be the generic offense, whatever that means. Well, let me say first that I did not understand your brief to be making the argument you're making now. That the — I don't think you even mentioned the understate law. Your Honor, that is — that is absolutely correct that our answer — Yes, it is absolutely correct that you didn't make this argument. That is absolutely correct. It was raised in our supplemental brief. We acknowledge that there is — that is procedurally problematic. If the Court wants to find the issue waived, it is certainly within the Court's discretion. But also, I mean, the result is that because this particular statute has two subsections, instead of saying an offense involving manufactured, distributed, or possessing, it says a federal — a particular federal statute or one under state law involving manufacturing, therefore it's different and it's outside the Hoteller analysis. That's what you're arguing. Well, essentially — well, I suppose essentially if you take the broadest definition, yes, and I don't think — No, but that's exactly what you — No, and I think that's — As the first part of the statute, though, we do have to look for — Well, yes, but the — the statutes are written differently. I mean, and we need to give effect to the — you know, Congress has written the state law statute differently than the federal. So you're referring to this as an — a statute that's opting out of the Hoteller analysis. The plain language of the statute says an offense under state law. It doesn't say an offense under state law that matches the federal definition under the Controlled Substances Act. Congress could have done that. I understand that. And I understand that you did make that argument. But that is a different argument from what I understand you're to be saying now. What you seem to be saying now is that because it says under state law, the whole Taylor structure is out the window and we're not looking for even a generic offense either.  Well, I do believe — Is that what you're arguing? Yes, and I do believe that was the position we took in our supplemental brief. I mean, we also — and we have two arguments, which is that even if you want to say, okay, you're not prepared to say any offense full stop, you still have the language of including. And by definition — Well, it actually says involving, but go ahead. Involving, excuse me. Which is different. And you're right, and I misspoke. I mean, different — substantively different. Yes. And involving is a broad term. It's so — our position is that involving means it doesn't have to match perfectly. And that makes sense. Because if they wanted it to — Well, involving can also mean it has to be about manufacturing, distributing, or possessing, not about something else. In other words, it has to have the elements of manufacturing, distributing, or possessing. I would argue that under the precedents, what it would have to have is the conduct at issue would have to involve manufacturing, possession, or possession with intent, even if the elements of the offense don't match up perfectly with the generic or federal offenses of — Okay. But what does that tell you about the aiding or abetting part of it? I mean, you're then again arguing that the usual categorical approach hinging on a generic definition is out the window. Essentially, yes. Because what the government's position is, is that by using the term involving — And again, I don't — we're not — this isn't something we just invented. This is the approach that every other circuit that's considered the issue has adopted this construction of the statute. So as applied to our case, yes, we understand that — and assuming for sake of argument that federal law is the benchmark, we understand that Washington's aiding and abetting statute is more broad. But nobody can seriously dispute that the crime of aiding and abetting the manufacture of a controlled substance or distribution or possession with intent involves that very conduct, regardless of the fact that there might be a quirk in the state aiding and abetting statute. I want to go back to your it-doesn't-matter argument. How do we tell — how does a judge tell whether a conviction involves? I would say that the elements of the offense, whatever the state offense, must involve conduct that amounts to — that involves possession, which is a very similar definition to the one the Supreme Court has construed a similar statute, whereas involving fraud or deceit, it's like the statute, it actually doesn't have to have the elements of fraud and deceit, as long as the elements of the statute — With Apprendi, how does a judge determine that fact? Well, the judge looks at the statute. I mean, now you're doing a statutory — Well, no, I'm saying apply it to this case. The judge looks at the statute. He says, OK, Washington punishes the manufacture, distribution or possession with intent. And, OK, Washington also incorporates aiding and abetting law. I understand that. But there's no doubt that these two statutes involve the manufacture, possession or — manufacture, distribution or possession with intent, whether or not the aiding and abetting statute is a perfect match for the generic aiding and abetting or Federal aiding and abetting. Well, but your argument is one would not look at the — at matches at all. See, I'm trying to get to that argument. No, I'm just looking at the statute, the state statute. No, that's right. So your argument is one need not worry about any generic offense. All one needs to do under your argument is say, does the State conviction involve, in this case, methamphetamine? Correct. And if it does, I don't need to worry about a match with any Federal generic offense. Correct. And that is the approach that the Eleventh Circuit adopted in the Smith case that we cited. And we would suggest that that's an approach you should — OK. And I want — and that's why I wanted to ask you. Smith involves a different statute, correct? Yes. It involves a Florida statute that lacked the mens rea that's required under Federal law. And — But what State — what Federal statute did it involve? Oh, it was — we're — we're defining — it was the same issue as an ACCA case, as whether it was a serious drug offense. Right. But in that case, didn't the Eleventh Circuit — and I may be mistaken — go through the other elements of the Taylor analysis? Didn't it say, there is a generic State offense, we're just not going to worry about the eating and abetting? I don't think that's correct. What — the case that I'm talking about, which is Smith, what the Court did is that they had — the Florida statute lacked the mens rea. They said the correlative Federal statute has a mens rea. You always — for a conviction under Federal law, you have to at least know — No, I'm sorry. We're missing each other. OK. It looked at the correlative Federal statute. Well, yes, it did look at that. And it said, without regard to the mental — the mens rea required, we do have a match. Right. So here you're saying, we don't need to do that, because your argument is that the word involving takes us out of that analysis at all. Well, I think I've made two arguments, and maybe I've stressed too much on the one. I mean, I do believe, as a matter of statutory construction, you don't have to do it. I do — but if you want to look at a generic offense or the Federal offense, I believe that we would still prevail, and so you don't need to really reach the first issue. But that's not what Smith did. Smith didn't do the broader thing. It did the more narrow thing. Well, it's actually interesting, because the argument as characterized by the defense was that the defense argues this, which is that it's overbroad. And it would say, we don't care. This — the statute says, an offense under State law — it doesn't say an offense under State law with any mens rea, so it counts. I understand your argument. But you said — and you're over your time, but I do have one more question. Other than Smith, what other case — you said every circuit that's looked at it has come out otherwise. What other case are you talking about? Well, there's McKinney out of the First Circuit, which dealt with an overbroad conspiracy statute. There is — or Wendleton out of the First Circuit, which also dealt with an overbroad definition of delivery. And there are a number of other circuits that dealt with issues of attempt and conspiracy that they all sort of said, whether or not these match, they all involve conduct. I mean, not all — I'm not going to say that every one of them dealt with the precise issue that — the precise argument we're raising. The three that I just — But it sounded like, to me, that's what you were saying, and I wondered the same thing. Every circuit that confront the issue has said that involving broadens the statute. Not every circuit has had to — has confronted the issue directly about what is the benchmark. I mean, I think that's the problem, is that in a lot of these cases, the way it's litigated — and in fairness, the way it was litigated in this case until Valdivia Flores — is everyone just assumes, in these drug cases, that Federal law is the benchmark. And in some — and in some statutes, that's definitely true, because it's definitely tied directly — We don't have that. I mean, no one's arguing that here. I understand that part. But that doesn't — all right. Well, your time is up. Your argument has been helpful. Thank you. I think I've heard the government argue for the first time today that just saying under State law means there's no generic definition at all, and that can't be right. Well, why can't — I'm reading the Eleventh Circuit opinion, and it says, we need not search for the elements of, quote, generic definitions of serious drug offense and that are defined by Federal law. And Federal law defines a serious drug offense as an offense under State law involving 10 years. I know we have an issue on that. Involving manufacturing, distributing, or — why can't we just tell, as the government says from looking at the State law conviction, that it involves one of those things? I have two answers. First of all, is that the Supreme Court doesn't adopt that kind of analysis. The Supreme Court says that when involving is generic. So I'm sorry that this case has been briefed. Tell me where the Supreme Court says it's not. In Shidler. In Shidler. So I'm sorry that this case has been sort of 28-J letters being spitted at the Court. But in Shidler, the Supreme Court was now analyzing what involving extortion under State law means. Involving extortion, chargeable under State law. So — And it said under State law in that case? It said under State law. Yes. Okay. And it was interpreting the RICO predicates, 1961-1. And what's so interesting about Shidler, and I'm sorry again that it came to you in a 28-J letter, is that it was interpreting a 1961-1, and the Congress, in writing 924-2E2A2, whatever we're talking about, specifically said in its section-by-section analysis that it was mimicking 1961-1. So we have a statute that the Supreme Court has interpreted that uses the word involving, a generic offense, and then under State law. And the Supreme Court has said that that must mean conduct capable of being described as generic extortion. So it's — in my view, it's directly on point. The government wants to — Did any of these cases — I mean, I must say that this whole under State law case notion was entirely new to me, and I don't think it was briefed anywhere. But are there other statutes — this statute, you say, did have under State law. Are there others that have been — has anybody ever discussed — has the Supreme Court or us ever discussed this under State law aspect? Yes, we've all — and it's always said in Taylor — No, but do those statutes say under State law? I think Taylor — The federal statutes. I think Taylor — The federal statutes. I believe Taylor does, although — As opposed to generic. I mean, it seems to me a fortuity that the statute says under State law, because the reason it says it is because it first has a separate subsection about federal statutes. And that's what's made clear in the legislative history that I've given to you in a 28J letter citing Shidler. It goes through and explains why it says under State law. So it says, we're going to give you the federal definition, which basically mimics 924C2, and then we're going to say under State law in a way similar to we've defined predicate acts for RICO. And that's 1961-1. And when the Supreme Court analyzed RICO, they said involving means generic. And under State law doesn't matter? Under State law absolutely matters. So in Shidler — And then you need the categorical match. Absolutely. So in Shidler, it was a civil suit, right? But under State law is not a reference that has anything that State law says is this. No, it's very clear. Because in Shidler, there were two allegations. It was either Hobbs Act extortion or Philadelphia, I think, extortion. And the Supreme Court went through and said, OK, you know, this protesting at abortion clinics is not Hobbs Act extortion. And then the plaintiff's fallback argument was that it's State law extortion. And the Supreme Court said, well, State law extortion still needs to match generic extortion. They define what generic extortion says, and it says it's not a match. So to me, it's directly on point. One question on Shidler. Shidler didn't say State law, did it? It did. But it said any act that would constitute — any act or threat involving extortion. Under — chargeable under State law. Doesn't it say under the federal statute? No, it doesn't, actually. Let me — again — That's what — that's what your — that's what your — I don't have Shidler in front of me, but that's what your 28J says. Your 28J says it holds that to constitute any act or threat involving extortion. Which is chargeable under State law. Under the — OK, you left that out. Is that in the — In my 28 — Is that in the dots? No, it says which is chargeable under State law. Oh, I see it now. OK. I apologize. I see it now. That's under — that's under B. Yes, it's under B. So it could be under — it could be under A, which would be — I'm — excuse me. A, which is — is the State law offenses. Or it could be B, which, if you looked at RICO, it's like every federal statute. No, I've got you. You've never seen it, right? I'm sorry. OK. So the Supreme Court went first through Hobbs Act extortion and said it's not Hobbs Act extortion. And said the plaintiff's fallback position is that it's State law extortion. And we find it's not State law extortion either. That's a 2003 case. The Supreme Court reiterated it in 2007. This Court repeated it in 2014 in United Brothers of Carpenter. I think that case is directly on point. OK. Thank you both very much. This is definitely an evolving case. Your arguments have been helpful. The case of United States v. Franklin is submitted. And we'll go on to United States v. Cooley.
judges: Thacker, Berzon, Hurwitz